1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ROBERT L. ROARK,

11              Petitioner,                    No. CIV S-07-1338 LKK DAD P

12        vs.

13    JOHN MARSHALL, Warden, et al.,

14              Respondents.              FINDINGS & RECOMMENDATIONS

15    _____/

16              Petitioner is a former state prisoner proceeding pro se with a petition for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18    entered against him on July 11, 2005 in the Nevada County Superior Court on charges of assault

19    with a deadly weapon and making criminal threats, following his plea of nolo contendere to those

20    charges.  He seeks relief on the grounds that his trial counsel rendered ineffective assistance.

21    Petitioner also requests an evidentiary hearing.  Upon careful consideration of the record and the

22    applicable law, the undersigned will recommend that petitioner's application for habeas corpus

23    relief be denied.

24                     PROCEDURAL AND FACTUAL BACKGROUND

25              At petitioner's preliminary examination, Alex Felty testified that on October 14,

26    2004, he was at his gold mining camp on the Bear River when he was approached by petitioner,

whom he had known and worked with for several years.  (CT at 73-74.)  Petitioner asked Felty to return some mining equipment he had loaned to him, and which should have been returned the day before.  (Id. at 74-75.)  Mr. Felty had been unable to return the equipment on the previous day because he had run over his girlfriend's puppy with his truck and had to stay home to console his girlfriend.  (Id. at 75-76.)  When Felty explained this to petitioner, petitioner became very angry and hit Felty on the forehead with a stick while threatening to kill him.  (Id. at 76-77.)  Mr. Felty sustained a deep gash on his forehead and was treated at the hospital.  (Id. at 78-79.)  On cross-examination, Mr. Felty testified that he and petitioner had quarreled in the past but had "gotten back to the point where we were very good friends."  (Id. at 83.)  He further testified that petitioner's girlfriend, T.C.; Felty's "dredge partner" Richard Sales; and a woman named Lyne McCarthy were present at the scene.  (Id. at 85.)

Jesse King, a Nevada County Deputy Sheriff, testified that he responded to an address in Grass Valley on the night of October 14, 2004.  (Id. at 89.)  He spoke to T.C., who told him that petitioner threatened to kill Mr. Felty and assaulted him with a stick at Felty's mining camp.  (Id. at 90-92.)  Officer King arrested petitioner and searched his tent, where he found a wooden stick and drug paraphernalia.  (Id. at 91, 93-95.)  On the way to the county jail, petitioner told Officer King that he had been "framed" and that he had merely been defending himself against Mr. Felty, who had a knife.  (Id. at 101.)  No other person mentioned to Officer King that Mr. Felty had a knife.  (Id. at 103-04.)  Lyne McCarthy told Officer King that she heard petitioner and Felty arguing and then saw petitioner chasing Felty with a stick or a bat in his hand.  (Id. at 105-08.)

Subsequently, petitioner

pleaded no contest to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1) [fn omitted]- -count 1) and threatening to commit a crime that will result in death or great bodily injury (§ 422 -- count 2).  In exchange, the prosecution amended count 2 from a felony to a misdemeanor; and dismissed a great bodily injury enhancement (§ 12022.7, subd. (a)) on count 1, a count of possession of paraphernalia ( Health & Saf. Code, § 11364 -- count

2

> 3), and an unrelated misdemeanor (case No. M05-063). Defendant was sentenced to state prison for four years and to county jail for six months consecutively. To satisfy the latter term, the court used 120 of the reported 265 days of custody credit and added 60 days of conduct credit (180 days total). Defendant was awarded the balance of 145 days of custody credit and 72 days of conduct credit. He was ordered to pay a $635 fine, including penalty assessments, a $200 restitution fine (§ 1202.4), and a $200 restitution fine suspended unless parole is revoked (§ 1202.45).

(Resp'ts' Lodged Doc. 2, Decision of the California Court of Appeal for the Third Appellate District, at 1-2.)

Petitioner's appellate counsel filed a timely notice of appeal and a brief in accordance with the decision in People v. Wende, 25 Cal. 3d 436 (1979), in which counsel set forth the facts of the case and requested that the appellate court review the record and determine whether there were any arguable issues on appeal. (Resp'ts' Lodged Doc.1.) The California Court of Appeal for the Third Appellate District modified the judgment to award petitioner additional custody and conduct credits but otherwise affirmed petitioner's judgment of conviction. (Resp'ts' Lodged Doc. 2 at 3.)

Petitioner subsequently filed a petition for a writ of habeas corpus in the Nevada County Superior Court. (Lodged Doc. 3.) The Superior Court rejected petitioner's claims, reasoning as follows:

> Petitioner, following his plea of "no-contest" and sentence to prison, has filed this petition for a writ of habeas corpus. He claims he was denied effective assistance of counsel at his preliminary hearing, because counsel did not investigate his defenses beforehand. Assuming, without finding, that his allegations are true, he is not entitled to relief. His "no contest" plea waived any claim he had that he did not receive proper representation at the preliminary hearing. See Blackledge v. Perry (1974) 417 U.S. 21, 29-30.)

> The petition is therefore denied.

(Resp'ts' Lodged Doc. 4.)

Petitioner subsequently filed petitions seeking habeas relief in the California Court of Appeal for the Third Appellate District and California Supreme Court. (Resp'ts'

1   Lodged Docs. 5, 7.)  Both of those petitions were summarily denied.  (Resp'ts' Lodged Docs. 6,

2   8.)

3                                    ANALYSIS

4   I.  Standards of Review Applicable to Habeas Corpus Claims

5               A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

6   some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

7   861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

8   Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

9   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

10  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

11  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

12  (1972).

13              This action is governed by the Antiterrorism and Effective Death Penalty Act of

14  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

15  1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for

16  granting habeas corpus relief:

17              An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
18          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
19          claim -

20              (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
21          determined by the Supreme Court of the United States; or

22              (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
23          State court proceeding.

24  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

25  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

26  does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

                                        4

1   of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

2   also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

3   we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

4   error, we must decide the habeas petition by considering de novo the constitutional issues

5   raised.").

6          The court looks to the last reasoned state court decision as the basis for the state

7   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

8   state court decision adopts or substantially incorporates the reasoning from a previous state court

9   decision, this court may consider both decisions to ascertain the reasoning of the last decision.

10  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

11  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

12  habeas court independently reviews the record to determine whether habeas corpus relief is

13  available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle

14  v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not

15  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

16  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

17  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

18  II.  Petitioner's Claim of Ineffective Assistance of Counsel

19          Petitioner claims that his trial counsel rendered ineffective assistance in several

20  respects.  First, he claims that counsel failed to conduct sufficient investigation to enable him to

21  adequately challenge the testimony of government witnesses Felty and Deputy King at his

22  preliminary hearing.  (Memorandum of Points and Authorities in support of petition (P&A) at 9-

23  12, 21-23.)  Second, he contends that Deputy King testified falsely at the preliminary hearing

24  without objection by trial counsel.  (Id. at 12-15.)  Third, petitioner claims that his trial counsel

25  improperly failed to object to the illegal search of his tent.  (Id. at 13-14.)  Fourth, he claims that

26  his trial counsel was "burdened by a conflict between his client's interests and his own

5

sympathies to the prosecution's position." (Id. at 16.)  Fifth, petitioner contends his trial counsel

failed to investigate whether Mr. Felty was armed, in order to support a possible defense of self-

defense.  (Id.)  Sixth, petitioner contends that his trial counsel failed to investigate and interview

potential defense witnesses.  (Id. at 21-23; Traverse at 3-5.)  Petitioner summarizes these claims

as follows:

> By his inaction, deliberate or otherwise, [counsel] deprived himself
> of the reasonable bases upon which to reach informed tactical and
> strategic decisions.  Most importantly, [counsel] called no
> witnesses and presented no defense at the Preliminary
> Examination, other than an inept attempt to cross-examine
> prosecution witnesses.  Thus, [counsel] defrauded both the court
> and his client and ill served his client . . .

(P&A at 17.)  In his traverse, petitioner also faults counsel for "refus[ing] to file briefs or motions

to suppress evidence."  (Traverse at 2.)

In addition, petitioner claims that his trial counsel operated under a prejudicial

conflict of interest in that he failed to recognize that his investigator was too busy with other

cases to sufficiently investigate petitioner's case.  (P&A at 18-24.)  Petitioner faults his trial

counsel for failing to replace the defense investigator, and argues that this "conflict" resulted in

prejudice to his case.  (Id. at 20; Traverse at 3, 7.)  Petitioner alleges that his trial counsel hired

the investigator even though he knew he was not "willing to commit the time or undertake the

work necessary for a complicated case," and that both counsel and the investigator "considered

petitioner guilty a foregone conclusion."  (P&A at 23.)

Petitioner also claims that there was an overall failure by his trial counsel to

conduct sufficient investigation.  (Id. at 24-26.)  He argues,

> in representing a criminal defendant, counsel owes the client a duty
> of loyalty, a duty to avoid conflicts of interest, a duty to advocate
> the defendant's cause, a duty to consult with the defendant on
> important decisions, a duty to keep defendant informed of
> important developments in the course of the prosecution, and a
> duty to bring to bear such skill and knowledge as will render the
> trial a reliable adversarial testing process.

/////

6

1   (Id. at 26.)  Petitioner claims that he entered a plea of nolo contendere because his trial counsel

2   advised him that prosecution witnesses Felty and Deputy King were credible, even though

3   counsel had not conducted sufficient investigation to determine whether they were credible or

4   not.  (P&A at 7, et seq.)[1]

5   III.  Legal Standards for Ineffective Assistance of Counsel

6          The Sixth Amendment guarantees the effective assistance of counsel.  The United

7   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

8   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

9   counsel, a petitioner must first show that, considering all the circumstances, counsel's

10  performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

11  identifies the acts or omissions that are alleged not to have been the result of reasonable

12  professional judgment, the court must determine whether, in light of all the circumstances, the

13  identified acts or omissions were outside the wide range of professionally competent assistance.

14  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

15

16          [1] Petitioner also argues that the California courts "erred" in denying his state habeas

17  petitions. (P&A at 26-27; Traverse at 11-12.)  This is not a separate claim for habeas relief and
    will not be considered by this court as such because the question of  whether the state courts'

18  rejection of petitioner's habeas claims were contrary to or an unreasonable application of federal
    law will be considered in connection with petitioner's substantive ineffective assistance of

19  counsel claims.  Petitioner also argues that he "was denied competent counsel, and because of
    this constitutional infirmity, petitioner is entitled to relief under the Apprendi/Blakely appeal

20  Rights." (Id. at 26.)  Petitioner has not demonstrated any entitlement to habeas relief pursuant to
    the decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) or Blakely v. Washington, 542

21  U.S. 296 (2004).  Instead, it appears that petitioner has made this statement solely because he
    specifically declined to waive his appeal rights with respect to any claim based on the Blakely

22  decision.  (See Pet., Ex. Y.)  Because he has presented no such claim in his federal habeas
    petition, this court will not address any Apprendi and Blakely claim.  Finally, in his traverse,

23  petitioner argues that because of his "unlawful incarceration," he has "suffered cruel and unusual
    punishment under the Eighth Amendment to the United States Constitution." (Traverse at 2.)  A

24  traverse is not the proper pleading to raise additional grounds for relief.  See Cacoperdo v.
    Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  Accordingly, to the extent petitioner is

25  attempting to belatedly raise an Eighth Amendment claim for the first time in the traverse, relief
    should be denied.  In any event, petitioner has failed to demonstrate that the sentence imposed in

26  his case constitutes cruel and unusual punishment under the Eighth Amendment.  See Lockyer v.
    Andrade, 538 U.S. 63 (2003).  Accordingly, petitioner is not entitled to relief on any such claim.

1    Second, a petitioner must establish that he was prejudiced by counsel's deficient

2 performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable

3 probability that, but for counsel's unprofessional errors, the result of the proceeding would have

4 been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine

5 confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

6 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's

7 performance was deficient before examining the prejudice suffered by the defendant as a result of

8 the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of

9 lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949,

10 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

11    In assessing an ineffective assistance of counsel claim "[t]here is a strong

12 presumption that counsel's performance falls within the 'wide range of professional assistance.'"

13 Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There

14 is in addition a strong presumption that counsel "exercised acceptable professional judgment in

15 all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

16 Strickland, 466 U.S. at 689).

17 IV. Analysis

18    All of the instances of ineffective assistance of trial counsel alleged by petitioner

19 occurred prior to the entry of petitioner's plea of nolo contendere to the charges against him. The

20 law is clear that petitioner may not raise claims of deprivation of his constitutional rights that

21 occurred prior to his plea. "When a criminal defendant has solemnly admitted in open court that

22 he is in fact guilty of the offense with which he is charged, he may not thereafter raise

23 independent claims relating to the deprivation of constitutional rights that occurred prior to the

24 entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). See also McMann v.

25 Richardson, 397 U.S. 759, 770-71 (1970); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994)

26 ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently

8

1   seek federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other

2   grounds in Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Ortberg v. Moody, 961 F.2d 135, 137

3   (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged

4   constitutional violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760

5   F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas

6   relief based upon "independent claims" of pre-plea constitutional violations).  Under these

7   circumstances, a prisoner may attack only the voluntary and intelligent character of his guilty

8   plea in habeas proceedings.  Ortberg, 961 F.2d 135 at 137.  To the extent that a petitioner seeks

9   to claim that he received ineffective assistance of counsel premised on his attorney's allegedly

10   faulty advice, he may do so only based upon that advice as it related to the decision to enter his

11   nolo contendere plea.  Any ineffective assistance claims relating to other, earlier actions by his

12   counsel are barred by the holding in Tollett v. Henderson.  See Moran, 57 F.3d at 700.

13        Petitioner attacks the voluntary and intelligent character of his guilty plea by

14   alleging that the advice he received from his counsel to plead guilty was inadequate because

15   counsel told him that witnesses Felty and Deputy King were credible, without having conducted

16   sufficient investigation to be able to make that decision.[2]  To prevail on such a claim, a petitioner

17   must show that: (1) counsel's representation fell below the range of competence demanded of

18   attorneys in criminal cases, and (2) "there is a reasonable probability that, but for counsel's errors,

19   he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart,

20   474 U.S. 52, 56 (1985).  As explained in Hill,

21

22        [2] Petitioner's claims regarding trial counsel's failure to object to the preliminary hearing
23   testimony of Officer King and Alex Felty, failure to object to the illegal search of his tent, failure
     to investigate whether the victim was armed, failure to investigate and interview potential
24   defense witnesses, failure to present a competent defense at the preliminary hearing, failure to
     "file briefs or motions to suppress evidence," failure to replace his defense investigator, and
25   overall failure to conduct sufficient investigation into petitioner's case, are all claims arising
     prior to the entry of plea that do not implicate the voluntariness of petitioner's plea of nolo
26   contendere and have therefore been waived by petitioner when he entered his nolo contendere
     plea .  Tollett, 411 U.S. at 267.

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59.  Petitioner has failed to make the required showing.

Petitioner takes issue with his trial counsel's failure to investigate specific witnesses who could possibly have established that Axis Felty was a drug abuser and dangerous, and that he had threatened petitioner in the past.  (P&A at 22-23.)  Petitioner also faults counsel for failing to point out discrepancies in the testimony of Deputy King at the preliminary hearing.  However, there is no evidence that any of these witnesses would have testified as petitioner hopes, that they would have been credible had they so testified, or that their testimony would have undermined the case against petitioner.  Petitioner's unsubstantiated allegations are insufficient to establish either deficient performance by counsel or prejudice.  The allegations also fail to demonstrate that further investigation of these witnesses would have led counsel to change his recommendation as to the plea or would have changed the outcome of a trial.  In light of these failures, petitioner cannot demonstrate that counsel's advice to plead guilty in exchange for a reduced sentence was unreasonable or that petitioner's plea was involuntary.  Although petitioner implies that counsel's purportedly deficient performance, in general, contributed to his decision to enter a plea, these allegations fall far short of establishing that his trial counsel's allegedly erroneous advice contributed to petitioner's entry of an involuntary and unknowing nolo contendere plea.

Petitioner was facing a possible sentence of eight years in prison, plus an additional six months in jail.  (Answer at 15.)  Pursuant to his plea agreement, certain charges against petitioner were reduced or dropped and petitioner was sentenced to the stipulated term of four years in state prison and six months in the county jail with the appropriate credits being

1  awarded.  In light of the benefit to petitioner resulting from his plea and the stipulated-to

2  sentence, counsel's advice to petitioner that he should accept the plea offer was certainly not

3  below an objective standard of reasonableness.  Further, given this benefit, petitioner has not

4  established that, but for counsel's errors, he would not have pleaded guilty and would have

5  insisted on going to trial.

6          The court also notes that the record reflects that the defense investigator hired by

7  petitioner's trial counsel wrote counsel a letter approximately eight months prior to petitioner's

8  preliminary examination in which he stated that, while he had been too busy to devote significant

9  time to petitioner's case before then, he was now "free to delve deeply into the merits and details

10  of People v. Roark."  (Resp'ts' Lodged Doc. 9.)  Petitioner's complaints about the defense

11  investigator's inability to work on his case therefore appear to lack a factual basis, at least after

12  the date of this letter.  There is no evidence that the defense investigator did not devote sufficient

13  resources to petitioner's case after that time.  Nor do petitioner's allegations establish that his

14  trial counsel had a "conflict of interest" by virtue of his failure to discharge the investigator.

15  There is no evidence that the investigator's performance or counsel's relationship with the

16  investigator constituted a conflict which "deprived [petitioner] of representation guaranteed by

17  the Sixth Amendment."  Daniels v. Woodford, 428 F.3d 1181, 1197 (9th Cir. 2005).

18          In addition, this court has reviewed the transcript of petitioner's change of plea

19  hearing and concludes that his nolo contendere plea was freely and voluntarily made, with full

20  knowledge of the consequences thereof.[3]  In this regard, a guilty plea must be knowing,

21  intelligent and voluntary.  Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama,

22  395 U.S. 238, 242 (1969).  "The voluntariness of [a petitioner's] guilty plea can be determined

23  only by considering all of the relevant circumstances surrounding it."  Brady, 397 F.2d at 749.  In

24

25          [3] As noted, petitioner received the sentence that was stipulated to by the parties as part of
26  the plea agreement that was placed on the record at the time the plea was entered.  (See
(Reporter's Transcript of June 1, 2005 at 3; Reporter's Transcript of July 11, 2005 at 8-11.)

11

1   Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of

2   verity to be given the record of plea proceeding when the plea is subsequently subject to a

3   collateral challenge.  While noting that the defendant's representations at the time of his guilty

4   plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the

5   court stated that, nonetheless, the defendant's representations, as well as any findings made by the

6   judge accepting the plea, "constitute a formidable barrier in any subsequent collateral

7   proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."

8   Blackledge, 431 U.S. at 74.  See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea is

9   presumed valid in habeas proceeding when the pleading defendant was represented by counsel);

10  Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006); Chizen v. Hunter, 809 F.2d 560, 561

11  (9th Cir. 1986).  The record must affirmatively show that a criminal defendant's guilty plea is

12  intelligent and voluntary.  Boykin, 395 U.S. at 242-43.

13          Under Boykin, the record must reflect that a criminal defendant pleading guilty

14  understands, and is voluntarily waiving, his rights to the privilege against compulsory

15  self-incrimination, to trial by jury and to confront one's accusers.  395 U.S. at 243.  However,

16  specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea."  Wilkins

17  v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).  Rather, if the record demonstrates that a guilty

18  plea is knowing and voluntary, "no particular ritual or showing on the record is required."

19  United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).

20          In this case there was a full and complete colloquy between the court and

21  petitioner at the time he entered his plea.  (Reporter's Transcript on Appeal (RT) at 3-10.)

22  Petitioner affirmatively stated that he wanted to plead no contest to assault with a deadly weapon

23  and the misdemeanor charge of making criminal threats.  (Id. at 4.)  He stated that he had enough

24  time to talk to his trial counsel about the nature of the charges and any possible defenses that he

25  might have.  (Id.)  Petitioner stated he realized he had given up "any direct appeal [he] might

26  have to a higher Court except as to a sentencing error."  (Id.)  Petitioner voluntarily waived his

12

1  rights to a trial by jury, the right to confront his accusers and his right against self-incrimination.

2  (Id. at 5.)  Petitioner was informed of the maximum penalty he could receive.  (Id.)  Petitioner

3  affirmed that he was pleading no contest because he was guilty of the offenses or he understood

4  there was enough evidence to prove his guilt at trial.  (Id. at 6.)  Petitioner stated that no one had

5  made any promises to him about what his sentence would be.  (Id.)  In the change of plea form

6  signed by petitioner, he agreed that there was a factual basis for the plea and that his decision to

7  plead nolo contendere had been made "freely and voluntarily without threat or fear to me or to

8  anyone closely related to or associated with me."  (Clerk's Transcript on Appeal (CT) at 37.)

9  Petitioner further acknowledged that he had "read, discussed, and have had explained to me by

10  my attorney" each of the items listed on the form.  (Id. at 38.)  Petitioner had notice of the nature

11  of the charges against him.  (Id. at 3.)  See Lonberger, 459 U.S. at 436 (in order for a plea to be

12  voluntary, an accused must receive notice of the nature of the charge against him, "the first and

13  most universally recognized requirement of due process") (quoting Smith v. O'Grady, 312 U.S.

14  329, 334 (1941)).  This is sufficient for purposes of federal habeas review.  Lonberger, 459 U.S.

15  at 436.  There is nothing in the record before this court to overcome the presumption that

16  petitioner pled guilty voluntarily and intelligently.  There is also no evidence that trial counsel's

17  alleged deficient performance affected the knowing and intelligent nature of petitioner's nolo

18  contendere plea.

19         Accordingly, for all of the foregoing reasons, petitioner is not entitled to relief on

20  his claims of ineffective assistance of counsel.

21  V.  Evidentiary Hearing

22         Petitioner requests an evidentiary hearing with respect to his claims.  Pursuant to

23  28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

24         (e)(2) If the applicant has failed to develop the factual basis of a
       claim in State court proceedings, the court shall not hold an
25         evidentiary hearing on the claim unless the applicant shows that-

26  /////

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670; Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004); and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

14

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: October 8, 2009.

11  _____

12  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

13  DAD:8
    roark1338.hc

15