1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT
9           FOR THE EASTERN DISTRICT OF CALIFORNIA
10  ROBERT L. ROARK,
11          Petitioner,              No. CIV S-07-1338 LKK DAD P
12       vs.
13  JOHN MARSHALL, Warden, et al.,   <u>AMENDED</u>
14          Respondents.             <u>FINDINGS AND RECOMMENDATIONS</u>
15  _____/

16          In light of petitioner's objections to the findings and recommendations issued in
17  this case and good cause appearing, this court vacates the findings and recommendations issued
18  on October 9, 2009, and hereby issues the following amended findings and recommendations.
19          Petitioner is a former state prisoner proceeding pro se with a petition for a writ of
20  habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction
21  entered against him on July 11, 2005 in the Nevada County Superior Court on charges of assault
22  with a deadly weapon and making criminal threats, following his plea of nolo contendere to those
23  charges. He seeks relief on the grounds that his trial counsel rendered ineffective assistance.
24  Petitioner also requests an evidentiary hearing. Upon careful consideration of the record and the
25  applicable law, the undersigned will recommend that petitioner's application for habeas corpus
26  relief be denied.

PROCEDURAL AND FACTUAL BACKGROUND

At petitioner's preliminary examination, Alex Felty testified that on October 14, 2004, he was at his gold mining camp on the Bear River when he was approached by petitioner, whom he had known and worked with for several years. (CT at 73-74.) Petitioner asked Felty to return some mining equipment he had loaned to him, and which should have been returned the day before. (Id. at 74-75.) Mr. Felty had been unable to return the equipment on the previous day because he had run over his girlfriend's puppy with his truck and had to stay home to console his girlfriend. (Id. at 75-76.) When Felty explained this to petitioner, petitioner became very angry and hit Felty on the forehead with a stick while threatening to kill him. (Id. at 76-77.) Mr. Felty sustained a deep gash on his forehead and was treated at the hospital. (Id. at 78-79.) On cross-examination, Mr. Felty testified that he and petitioner had quarreled in the past but had "gotten back to the point where we were very good friends." (Id. at 83.) He further testified that petitioner's girlfriend, T.C.; Felty's "dredge partner" Richard Sales; and a woman named Lyne McCarthy were present at the scene. (Id. at 85.)

Jesse King, a Nevada County Deputy Sheriff, testified that he responded to an address in Grass Valley on the night of October 14, 2004. (Id. at 89.) He spoke to T.C., who told him that petitioner threatened to kill Mr. Felty and assaulted him with a stick at Felty's mining camp. (Id. at 90-92.) Officer King arrested petitioner and searched his tent, where he found a wooden stick and drug paraphernalia. (Id. at 91, 93-95.) On the way to the county jail, petitioner told Officer King that he had been "framed" and that he had merely been defending himself against Mr. Felty, who had a knife. (Id. at 101.) No other person mentioned to Officer King that Mr. Felty had a knife. (Id. at 103-04.) Lyne McCarthy told Officer King that she heard petitioner and Felty arguing and then saw petitioner chasing Felty with a stick or a bat in his hand. (Id. at 105-08.)

/////
/////

1    Subsequently, petitioner

2    pleaded no contest to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1) [fn omitted]- -count 1) and threatening to commit a crime that will result in death or great bodily injury (§ 422 -- count 2). In exchange, the prosecution amended count 2 from a felony to a misdemeanor; and dismissed a great bodily injury enhancement (§ 12022.7, subd. (a)) on count 1, a count of possession of paraphernalia ( Health & Saf. Code, § 11364 -- count 3), and an unrelated misdemeanor (case No. M05-063). Defendant was sentenced to state prison for four years and to county jail for six months consecutively. To satisfy the latter term, the court used 120 of the reported 265 days of custody credit and added 60 days of conduct credit (180 days total). Defendant was awarded the balance of 145 days of custody credit and 72 days of conduct credit. He was ordered to pay a $635 fine, including penalty assessments, a $200 restitution fine (§ 1202.4), and a $200 restitution fine suspended unless parole is revoked (§ 1202.45).

(Resp'ts' Lodged Doc. 2, Decision of the California Court of Appeal for the Third Appellate District, at 1-2.)

Petitioner's appellate counsel filed a timely notice of appeal and a brief in accordance with the decision in People v. Wende, 25 Cal. 3d 436 (1979), in which counsel set forth the facts of the case and requested that the appellate court review the record and determine whether there were any arguable issues on appeal. (Resp'ts' Lodged Doc.1.) The California Court of Appeal for the Third Appellate District modified the judgment to award petitioner additional custody and conduct credits but otherwise affirmed petitioner's judgment of conviction. (Resp'ts' Lodged Doc. 2 at 3.)

Petitioner subsequently filed a petition for a writ of habeas corpus in the Nevada County Superior Court. (Lodged Doc. 3.) The Superior Court rejected petitioner's claims, reasoning as follows:

Petitioner, following his plea of "no-contest" and sentence to prison, has filed this petition for a writ of habeas corpus. He claims he was denied effective assistance of counsel at his preliminary hearing, because counsel did not investigate his defenses beforehand. Assuming, without finding, that his allegations are true, he is not entitled to relief. His "no contest" plea waived any claim he had that he did not receive proper

3

representation at the preliminary hearing. See <u>Blackledge v. Perry</u> (1974) 417 U.S. 21, 29-30.)

The petition is therefore denied.

(Resp'ts' Lodged Doc. 4.)

Petitioner subsequently filed petitions seeking habeas relief in the California Court of Appeal for the Third Appellate District and California Supreme Court. (Resp'ts' Lodged Docs. 5, 7.) Both of those petitions were summarily denied. (Resp'ts' Lodged Docs. 6, 8.)

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

/////

4

     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

    The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

/////

/////

II. Petitioner's Claim of Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance in several respects. First, he claims that counsel failed to conduct sufficient investigation to enable him to adequately challenge the testimony of government witnesses Felty and Deputy King at his preliminary hearing. (Memorandum of Points and Authorities in support of petition (P&A) at 9-12, 21-23.) Second, he contends that Deputy King testified falsely at the preliminary hearing without objection by trial counsel. (Id. at 12-15.) Third, petitioner claims that his trial counsel improperly failed to object to the illegal search of his tent. (Id. at 13-14.) Fourth, he claims that his trial counsel was "burdened by a conflict between his client's interests and his own sympathies to the prosecution's position." (Id. at 16.) Fifth, petitioner contends his trial counsel failed to investigate whether Mr. Felty was armed, in order to support a possible defense of self-defense. (Id.) Sixth, petitioner contends that his trial counsel failed to investigate and interview potential defense witnesses. (Id. at 21-23; Traverse at 3-5.) Petitioner summarizes these claims as follows:

> By his inaction, deliberate or otherwise, [counsel] deprived himself of the reasonable bases upon which to reach informed tactical and strategic decisions. Most importantly, [counsel] called no witnesses and presented no defense at the Preliminary Examination, other than an inept attempt to cross-examine prosecution witnesses. Thus, [counsel] defrauded both the court and his client and ill served his client . . .

(P&A at 17.) In his traverse, petitioner also faults counsel for "refus[ing] to file briefs or motions to suppress evidence." (Traverse at 2.)

In addition, petitioner claims that his trial counsel operated under a prejudicial conflict of interest in that he failed to recognize that his investigator was too busy with other cases to sufficiently investigate petitioner's case. (P&A at 18-24.) Petitioner faults his trial counsel for failing to replace the defense investigator, and argues that this "conflict" resulted in prejudice to his case. (Id. at 20; Traverse at 3, 7.) Petitioner alleges that his trial counsel hired the investigator even though he knew he was not "willing to commit the time or undertake the

work necessary for a complicated case," and that both counsel and the investigator "considered petitioner guilty a foregone conclusion." (P&A at 23.)

Petitioner also claims that there was an overall failure by his trial counsel to conduct sufficient investigation. (Id. at 24-26.) He argues,

> in representing a criminal defendant, counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest, a duty to advocate the defendant's cause, a duty to consult with the defendant on important decisions, a duty to keep defendant informed of important developments in the course of the prosecution, and a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

(Id. at 26.) Petitioner claims that he entered a plea of nolo contendere because his trial counsel advised him that prosecution witnesses Felty and Deputy King were credible, even though counsel had not conducted sufficient investigation to determine whether they were credible or not. (P&A at 7, et seq.)[1]

/////

/////

---

[1] Petitioner also argues that the California courts "erred" in denying his state habeas petitions. (P&A at 26-27; Traverse at 11-12.) This is not a separate claim for habeas relief and will not be considered by this court as such because the question of whether the state courts' rejection of petitioner's habeas claims were contrary to or an unreasonable application of federal law will be considered in connection with petitioner's substantive ineffective assistance of counsel claims. Petitioner also argues that he "was denied competent counsel, and because of this constitutional infirmity, petitioner is entitled to relief under the Apprendi/Blakely appeal Rights." (Id. at 26.) Petitioner has not demonstrated any entitlement to habeas relief pursuant to the decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) or Blakely v. Washington, 542 U.S. 296 (2004). Instead, it appears that petitioner has made this statement solely because he specifically declined to waive his appeal rights with respect to any claim based on the Blakely decision. (See Pet., Ex. Y.) Because he has presented no such claim in his federal habeas petition, this court will not address any Apprendi and Blakely claim. Finally, in his traverse, petitioner argues that because of his "unlawful incarceration," he has "suffered cruel and unusual punishment under the Eighth Amendment to the United States Constitution." (Traverse at 2.) A traverse is not the proper pleading to raise additional grounds for relief. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, to the extent petitioner is attempting to belatedly raise an Eighth Amendment claim for the first time in the traverse, relief should be denied. In any event, petitioner has failed to demonstrate that the sentence imposed in his case constitutes cruel and unusual punishment under the Eighth Amendment. See Lockyer v. Andrade, 538 U.S. 63 (2003). Accordingly, petitioner is not entitled to relief on any such claim.

III. Legal Standards for Ineffective Assistance of Counsel

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

IV. <u>Analysis</u>

All of the instances of ineffective assistance of trial counsel alleged by petitioner occurred prior to the entry of petitioner's plea of nolo contendere to the charges against him. The law is clear that petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). <u>See</u> also <u>McMann v. Richardson</u>, 397 U.S. 759, 770-71 (1970); <u>Moran v. Godinez</u>, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"), <u>overruled on other grounds</u> in <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003); <u>Ortberg v. Moody</u>, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea"); <u>Hudson v. Moran</u>, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations). Under these circumstances, a prisoner may attack only the voluntary and intelligent character of his guilty plea in habeas proceedings. <u>Ortberg</u>, 961 F.2d 135 at 137. To the extent that a petitioner seeks to claim that he received ineffective assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it related to the decision to enter his nolo contendere plea. Any ineffective assistance claims relating to other, earlier actions by his counsel are barred by the holding in <u>Tollett v. Henderson</u>. <u>See</u> <u>Moran</u>, 57 F.3d at 700.

Petitioner attacks the voluntary and intelligent character of his guilty plea by alleging that the advice he received from his counsel to plead guilty was inadequate because counsel told him that witnesses Felty and Deputy King were credible, without having conducted

/////

9

sufficient investigation to be able to make that decision.[2]  To prevail on such a claim, a petitioner must show that: (1) counsel's representation fell below the range of competence demanded of attorneys in criminal cases, and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  As explained in Hill,

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59.  Petitioner has failed to make the required showing.

Petitioner takes issue with his trial counsel's failure to investigate specific witnesses who could possibly have established that Axis Felty was a drug abuser and dangerous, and that he had threatened petitioner in the past.  (P&A at 22-23.)  Petitioner also faults counsel for failing to point out discrepancies in the testimony of Deputy King at the preliminary hearing. However, there is no evidence that any of these witnesses would have testified as petitioner hopes, that they would have been credible had they so testified, or that their testimony would have undermined the case against petitioner.  Petitioner's unsubstantiated allegations are insufficient to establish either deficient performance by counsel or prejudice.  The allegations also fail to demonstrate that further investigation of these witnesses would have led counsel to

---

[2] Petitioner's claims regarding trial counsel's failure to object to the preliminary hearing testimony of Officer King and Alex Felty, failure to object to the illegal search of his tent, failure to investigate whether the victim was armed, failure to investigate and interview potential defense witnesses, failure to present a competent defense at the preliminary hearing, failure to "file briefs or motions to suppress evidence," failure to replace his defense investigator, and overall failure to conduct sufficient investigation into petitioner's case, are all claims arising prior to the entry of plea that do not implicate the voluntariness of petitioner's plea of nolo contendere and have therefore been waived by petitioner when he entered his nolo contendere plea .  Tollett, 411 U.S. at 267.

10

change his recommendation as to the plea or would have changed the outcome of a trial. In light of these failures, petitioner cannot demonstrate that counsel's advice to plead guilty in exchange for a reduced sentence was unreasonable or that petitioner's plea was involuntary. Although petitioner implies that counsel's purportedly deficient performance, in general, contributed to his decision to enter a plea, these allegations fall far short of establishing that his trial counsel's allegedly erroneous advice contributed to petitioner's entry of an involuntary and unknowing nolo contendere plea.

Petitioner was facing a possible sentence of eight years in prison, plus an additional six months in jail. (Answer at 15.) Pursuant to his plea agreement, certain charges against petitioner were reduced or dropped and petitioner was sentenced to the stipulated term of four years in state prison and six months in the county jail with the appropriate credits being awarded. In light of the benefit to petitioner resulting from his plea and the stipulated-to sentence, counsel's advice to petitioner that he should accept the plea offer was certainly not below an objective standard of reasonableness. Further, given this benefit, petitioner has not established that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

The state court record reflects that the defense investigator hired by petitioner's trial counsel wrote a letter approximately four months after petitioner's preliminary examination in which he advised counsel that, while he had been too busy to devote significant time to petitioner's case before then, he was now "free to delve deeply into the merits and details of People v. Roark." (Resp'ts' Lodged Doc. 9.) Petitioner argues that this letter demonstrates the investigator did not conduct sufficient investigation into his case and that his trial counsel was aware of this failure to investigate. However, the letter in question does not demonstrate that petitioner's case had not been sufficiently investigated by the time trial counsel advised petitioner to plead guilty, which occurred more than two weeks after the date of the letter. Nor do petitioner's allegations, or the letter he points to in support thereof, establish that his trial counsel

11

had a "conflict of interest" by virtue of his failure to discharge the investigator.  There is no evidence before the court that the investigator's performance or counsel's relationship with the investigator constituted a conflict which "deprived [petitioner] of representation guaranteed by the Sixth Amendment."  Daniels v. Woodford, 428 F.3d 1181, 1197 (9th Cir. 2005).

In addition, this court has reviewed the transcript of petitioner's change of plea hearing and concludes that his nolo contendere plea was freely and voluntarily made, with full knowledge of the consequences thereof.[3]  In this regard, a guilty plea must be knowing, intelligent and voluntary.  Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it."  Brady, 397 F.2d at 749.  In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceeding when the plea is subsequently subject to a collateral challenge.  While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."  Blackledge, 431 U.S. at 74.  See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea is presumed valid in habeas proceeding when the pleading defendant was represented by counsel); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).  The record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary.  Boykin, 395 U.S. at 242-43.

/////

---

[3] As noted, petitioner received the sentence that was stipulated to by the parties as part of the plea agreement that was placed on the record at the time the plea was entered.  (See (Reporter's Transcript of June 1, 2005 at 3; Reporter's Transcript of July 11, 2005 at 8-11.)

1       Under Boykin, the record must reflect that a criminal defendant pleading guilty
2  understands, and is voluntarily waiving, his rights to the privilege against compulsory
3  self-incrimination, to trial by jury and to confront one's accusers.  395 U.S. at 243.  However,
4  specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea."  Wilkins
5  v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).  Rather, if the record demonstrates that a guilty
6  plea is knowing and voluntary, "no particular ritual or showing on the record is required."
7  United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).

8       In this case there was a full and complete colloquy between the court and
9  petitioner at the time he entered his plea.  (Reporter's Transcript on Appeal (RT) at 3-10.)
10 Petitioner affirmatively stated that he wanted to plead no contest to assault with a deadly weapon
11 and the misdemeanor charge of making criminal threats.  (Id. at 4.)  He stated that he had enough
12 time to talk to his trial counsel about the nature of the charges and any possible defenses that he
13 might have.  (Id.)  Petitioner stated he realized he had given up "any direct appeal [he] might
14 have to a higher Court except as to a sentencing error."  (Id.)  Petitioner voluntarily waived his
15 rights to a trial by jury, the right to confront his accusers and his right against self-incrimination.
16 (Id. at 5.)  Petitioner was informed of the maximum penalty he could receive.  (Id.)  Petitioner
17 affirmed that he was pleading no contest because he was guilty of the offenses or he understood
18 there was enough evidence to prove his guilt at trial.  (Id. at 6.)  Petitioner stated that no one had
19 made any promises to him about what his sentence would be.  (Id.)  In the change of plea form
20 signed by petitioner, he agreed that there was a factual basis for the plea and that his decision to
21 plead nolo contendere had been made "freely and voluntarily without threat or fear to me or to
22 anyone closely related to or associated with me."  (Clerk's Transcript on Appeal (CT) at 37.)
23 Petitioner further acknowledged that he had "read, discussed, and have had explained to me by
24 my attorney" each of the items listed on the form.  (Id. at 38.)  Petitioner had notice of the nature
25 of the charges against him.  (Id. at 3.)  See Lonberger, 459 U.S. at 436 (in order for a plea to be
26 voluntary, an accused must receive notice of the nature of the charge against him, "the first and

most universally recognized requirement of due process") (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). This is sufficient for purposes of federal habeas review. Lonberger, 459 U.S. at 436. There is nothing in the record before this court to overcome the presumption that petitioner pled guilty voluntarily and intelligently. There is also no evidence that trial counsel's alleged deficient performance affected the knowing and intelligent nature of petitioner's nolo contendere plea.

Accordingly, for all of the foregoing reasons, petitioner is not entitled to relief on his claims of ineffective assistance of counsel.

V. Evidentiary Hearing

Petitioner requests an evidentiary hearing with respect to his claims. Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has a "colorable claim for relief."

1  Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670; Stankewitz v. Woodford, 365 F.3d
2  706, 708 (9th Cir. 2004); and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)).  To show
3  that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would
4  entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation
5  marks and citation omitted).
6          The court concludes that no additional factual supplementation is necessary and
7  that an evidentiary hearing is not appropriate with respect to the claims raised in the instant
8  petition.  The facts alleged in support of these claims, even if established at a hearing, would not
9  entitle petitioner to relief.  Therefore, petitioner's request for an evidentiary hearing should be
10 denied.

                                    CONCLUSION

12         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for
13 a writ of habeas corpus be denied.
14         These findings and recommendations are submitted to the United States District
15 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-
16 one days after being served with these findings and recommendations, any party may file written
17 objections with the court and serve a copy on all parties.  Such a document should be captioned
18 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
19 shall be served and filed within seven days after service of the objections.  The parties are
20 advised that failure to file objections within the specified time may waive the right to appeal the
21 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
22 DATED: January 20, 2010.

                                                        _____
                                                        DALE A. DROZD
25 DAD:8:                                               UNITED STATES MAGISTRATE JUDGE
   roark1338.hc2